[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS APPEAL
ISSUE
Whether the court should grant or deny defendants' motion to dismiss on grounds that the court "lacks subject matter jurisdiction to hear this appeal, and the plaintiff's claim of deprivation of due process seeking monetary damages, and the application for a temporary and permanent injunction."
The motion to dismiss plaintiff's administrative appeal should be granted if the court finds that section 23-59
of the General Statutes provides no right of appeal from decisions of a tree warden made pursuant to section 23-65 (f) of the General Statutes. In the alternative, if the court finds that section 23-59 provides a right of appeal from decisions of a tree warden made pursuant to section 25-65 (f), plaintiff has standing under section 22a-19 to raise environmental issues, but cannot obtain injunctive and monetary relief.
FACTS
The plaintiff, Robert Fromer, filed an amended complaint on October 15, 1990 against the defendants Tree Warden and City of New London. See Connecticut Practice Book section 175 (rev'd to 1978, as amended). The plaintiff filed a second amendment to the complaint on November 26, 1990. However, this document is not in the file, nor is there an indication of whether this second amendment became operative. See Connecticut Practice Book section 176 (rev'd to 1978, as amended). It does not appear that a request to revise and objection thereto were heard and decided. Thus, in discussing plaintiff's claims, reference will be made to the amended complaint filed on October 15, 1990.
The plaintiff alleges that on August 20, 21 and 22 of 1990, the Tree Warden published notice of a public hearing to consider the request of Mr. Bruce Hyde, Director of Development and Planning, to remove trees on Captain's Walk and creating a through street to be known as State Street. The Tree Warden allegedly held a public hearing on August 27, 1990. Plaintiff claims that, pursuant to section 22a-19 of the General Statutes, he intervened in the proceeding before the Tree Warden by filing a verified pleading stating that the removal CT Page 4393 of the trees involves conduct which has, or is reasonably likely to have, the effect of unreasonably polluting, impairing and destroying the public trust in the air, water or other natural resources of the state. What appears to be a copy of the plaintiff's notice of intervention is attached to a prior "Objection to Motion to Dismiss," which is stamped "Not in Compliance with P.B. 206."
Plaintiff further alleges that on August 30, 1990, the Tree Warden granted permission to remove the trees. Plaintiff states that he is appealing pursuant to section 23-59
of the General Statutes. He claims to be "statutorily and legislatively aggrieved for the limited purpose of raising environmental issues pursuant to Section 22a-19. . . ."
At short calendar on February 4, 1991, the plaintiff and defendants agreed to argue the defendants' motion to dismiss dated January 23, 1991, which was not on the calendar. The defendants move to dismiss the action on the grounds that the court "lacks subject matter jurisdiction to hear this appeal, and the plaintiff's claim of deprivation of due process seeking money damages, and the application for a temporary and permanent injunction." Specifically, the defendants assert that section 23-59 has no application to this action and does not provide for an injunction. They also argue that an "application for a temporary and permanent injunction, as well as a claim for monetary damages, it not jurisdictionally permitted when combined with an administrative appeal." The defendants further argue that plaintiff has failed properly to allege aggrievement.
The defendants submitted to the court a memorandum of law in support of their motion to dismiss dated January 23, 1991. The plaintiff filed a memorandum of law in opposition to the defendants' motion to dismiss on January 31, 1991.
DISCUSSION
In order to take advantage of a statutory right to appeal from the decision of a local authority, there must be strict compliance with the statutory provisions which created that right. See Simko v. Zoning Board of Appeals, 206 Conn. 374,377 (1988). These provisions are mandatory and jurisdictional; failure to comply subjects the appeal to dismissal. Id.
A tree warden, in granting another's request to remove trees, acts pursuant to section 23-65 (f) of the General Statutes: CT Page 4394
 (f) Any person, firm or corporation, other than a tree warden or his deputy, who desires the cutting or removal, in whole or in part, of any tree or shrub or part thereof within the limits of any public road or grounds, may apply in writing to the town tree warden, the borough tree warden or the commissioner of transportation or other authority having jurisdiction thereof for a permit so to do. Upon receipt of such permit, but not before, he may proceed with such cutting or removal. Before granting or denying such permit, such authority may hold a public hearing as provided in section 23-59, and when the applicant is a public utility corporation, the party aggrieved by such decision may, within ten days, appeal therefrom to the department of public utility control, which shall have the power to review, confirm, change or set aside the decision appealed from and its decision shall be final. This shall be in addition to the powers granted to it under section 16-234, provided, if an application for such permit has been made to either a tree warden or the commissioner of transportation or other authority and denied by him, an application for a permit for the same relief shall not be made to any other such authority.
Connecticut General Statutes section 23-65 (f) (rev'd to 1989). When acting on his own opinion that public safety demands the removal of trees, a tree warden acts pursuant to section23-59: Sec. 23-59. Powers and duties of wardens. The town or borough tree warden shall have the care and control of all trees and shrubs in whole or in part within the limits of any public road or grounds and within the limits of his town or borough, except those along state highways under the control of the commissioner of transportation and except those in public parks or grounds which are under the jurisdiction of park commissioners, and of these he shall take the care and control if so requested in writing by the park commissioners. Such care and control shall extend to such limbs, roots or parts of trees and shrubs as extend or overhang the limits of any such public road CT Page 4395 or grounds. He shall expend all funds appropriated for the setting out, care and maintenance of such trees and shrubs. He shall enforce all provisions of law for the preservation of such trees and shrubs and of roadside beauty. He shall remove or cause to be removed all illegally erected signs or advertisements, placed upon poles, trees or other objects within any public road or place under his jurisdiction. He may prescribe such regulations for the care and preservation of such trees and shrubs as he deems expedient and may provide therein for a fine not exceeding ninety dollars in any one case for the violation of such regulations; and such regulations, when approved by the selectmen or borough warden and posted on a public signpost in the town or borough, if any, or at one other exterior place near the office of the town or borough clerk, shall have the force and effect of town or borough ordinances. Whenever, in the opinion of the tree warden, the public safety demands the removal or pruning of any tree or shrub under his control, he may cause such tree or shrub to be removed or pruned at the expense of the town or borough and the selectmen or borough warden shall order paid to the person performing such work such reasonable compensation therefor as may be determined and approved in writing by the tree warden. Unless the condition of such tree or shrub constitutes an immediate public hazard, he shall, at least five days before such removal or pruning, post thereon a suitable notice stating his intention to remove or prune such tree or shrub. If any person, firm or corporation objects to such removal or pruning, he or it may appeal to the tree warden in writing, who shall hold a public hearing at some suitable time and place after giving reasonable notice of such hearing to all persons known to be interested therein and posting a notice thereof on such tree or shrub. Within three days after such hearing, the tree warden shall render his decision granting or denying the application, and the party aggrieved by such decision may, within ten days, appeal therefrom to the superior court for the judicial district within which CT Page 4396 such town or borough is located. The tree warden may, with the approval of the selectmen or borough warden, remove any trees or other plants within the limits of public highways or grounds under his jurisdiction, which are particularly obnoxious as hosts of insect or fungus pests.
Connecticut General Statutes section 253-59 (rev'd to 1989). As the Tree Warden in the instant case is alleged to have granted Mr. Hyde's request to remove trees for the purpose of constructing a street, not to have acted on his own initiative for public safety reasons, the Tree Warden must be said to have acted pursuant to his powers under section 23-65 (f).
Plaintiff alleges that he is appealing pursuant to section 23-59. Defendants argue that the right of appeal provided in section 23-59 only applies where a tree warden has acted on his own initiative to remove trees for public safety reasons, not where a tree warden has approved an application pursuant to section 23-65 (f). Defendants also argue that the plaintiff is not aggrieved. Plaintiff argues that he is entitled to appeal and that he need not be aggrieved because he has standing under section 22a-19.
Section 22a-19 (a) provides:
 Administrative proceedings. (a) In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.
Connecticut General Statutes section 22a-19 (rev'd to 1989). The Supreme Court of Connecticut has held that one who intervenes in an administrative proceeding pursuant to section22a-19 has "`statutory standing to appeal for the limited purpose of raising environmental issues.'" Red Hill Coalition, CT Page 4397 Inc. v. Town Plan Zoning Commission, 212 Conn. 727, 734
(1989) (quoting Mystic Marinelife Aquarium, Inc. v. Gill,175 Conn. 483, 490 (1978); see also Red Hill Coalition, Inc. v. Conservation Commission, 212 Conn. 710, 715 (1989). A plaintiff who has limited standing under section 22a-19 need not be otherwise "aggrieved." Mystic Marinelife,175 Conn. at 490-91, 498-99.
The verified pleading of intervention "set(s) the parameters of the issues" which may be raised by the intervenor on appeal. Mystic Marinelife, 175 Conn. at 490. In addition, standing under section 22a-19 is limited further by the jurisdiction of the administrative authority whose decision is being challenged:
 Section 22a-19, which authorizes any person to intervene in any administrative proceeding and to raise therein environmental issues must be read in connection with the legislation which defines the authority of the particular administrative agency. Section 22a-19 is not intended to expand the jurisdictional authority of an administrative body whenever an intervenor raises environmental issues. Thus, an inland wetland agency is limited to considering only environmental matters which impact on inland wetlands. Other environmental impacts must be raised before other appropriate administrative bodies, if any. . . .
Connecticut Fund for the Environment v. Stamford, 192 Conn. 247,250-51 (1984) (emphasis added).
Therefore, one who intervened pursuant to section22a-19 in the proceedings before the local authority has standing to appeal for the limited purpose of raising environmental issues which are within the local authority's jurisdiction to consider when carrying out his duties; claims of procedural irregularities or of environmental effects the jurisdiction of the local authority may not be brought before the court.
However, standing alone, does not entitle a plaintiff to appeal. Doyle v. Commissioner of Environmental Protection, 3 CTLR 603, 605 (April 5, 1991, Arena, J.).
 The court in Mystic Marinelife determined that by virtue of having intervened under section 22a-19 the CT Page 4398 intervenor has standing to bring an appeal, for purposes of raising environmental issues, because section 22a-19 creates statutory aggrievement. (Citation omitted.) The fact that a party is aggrieved is insufficient in and of itself to create a right of appeal where no statutory right otherwise exists. (Citation omitted.)
 Subsequent to Mystic Marinelife the court stated that, "(b)y permitting intervention under section 22a-19 (a) the EPA allows private persons to `intervene in an existing judicial review to an agency action or to initiate an independent declaratory or injunctive action.'" Red Hill Coalition, Inc. v. Conservation Commission, 212 Conn. 710, 715 (1989), quoting Connecticut Water Co. v. Beausoleil, 204 Conn. 38, 45 (1987) (emphasis added). It is determined that in order to bring an appeal pursuant to Connecticut General Statutes section 22a-19 a right to appeal must exist, even if, as in the case of Mystic Marinelife, all other parties who brought the appeal have been determined not to be aggrieved.
 . . . (I)t is found that section 22a-19
was never intended to create a right of appeal where no right of appeal had previously existed.
 Consequently, it is concluded that plaintiffs are not entitled to maintain this appeal merely because they have intervened under section 22a-19.
Id. (emphasis in original).
Thus, in order for plaintiff Fromer to maintain his appeal, section 23-59 must provide a right of appeal where a tree warden has approved an application to remove trees under section 23-65 (f).
"The interpretation of legislation presents a question of law." Pascale v. Board of Zoning Appeals,150 Conn. 113, 116 (1961); see also Southington v. State Board of Labor Relations, 210 Conn. 549, 559 (1989). Where the language used by the legislature is plain and unambiguous, there is no room for statutory construction by the courts and the statute CT Page 4399 will be applied as its words direct. Kelemen v. Rimrock Corporation, 207 Conn. 599, 606 (1988); Verrastro v. Sivertsen, 188 Conn. 213, 220 (1982).
 If the words of a statute are clear, the duty of a reviewing court is to apply the legislature's directive, since, where the wording is plain, courts will not speculate as to any supposed intention. The question before a court then is not what the legislature actually intended, but what intention it expressed by the words that is used. . . .
Ford Motor Credit Co. v. B. W. Beardsley, Inc., 208 Conn. 13,18 (1988) (citations omitted). "A statute does not become ambiguous solely because the parties disagree as to its meaning." Id. (citations omitted).
"In the construction of statutes, words and phrases shall be construed according to the commonly approved usage of the language. . . ." Connecticut General Statutes section 1-1(a) (rev'd to 1989); Cos Cob Volunteer Fire Co. No. 1., Inc. v. FOIC, 212 Conn. 100, 105 (1989). "(C)ommon sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." Ford Motor Credit Co., 208 Conn. at 20 (citations omitted). A statute "should not be interpreted to thwart its purpose." Builders Service Corp. v. Planning Zoning Commission, 208 Conn. 267,276 (1988) (citation omitted). Also, "no word should be treated as superfluous or insignificant." Id. (citation omitted). "A statute is to be read as a whole; (citations omitted); `with a view toward reconciling its separate parts in order to render a reasonable overall interpretation."' Ford Motor Credit Co., 208 Conn. at 18 (citations omitted).
"The factors that this court looks to in construing a statute include, `its legislative history, its language, the purpose it is to serve, and the circumstances surrounding its enactment.'" Verrastro, 188 Conn. at 221 (citations omitted); see also Capalbo v. Planning Zoning Board of Appeals,208 Conn. 480, 486 (1988). The legislature "must always be presumed to be familiar with settled rules of statutory construction and the interpretation the courts have placed upon legislation which has been enacted." Skorpios Properties, Ltd. v. Waage, 172 Conn. 152, 155 (1976) (citation omitted). "(T)he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them. And it is always presumed to have intended that effect which its action or non-action will CT Page 4400 have upon any one of them. And it is always presumed to have intended that effect which its action or non-action produces." Plourde v. Liburdi, 207 Conn. 412, 417 (1988) (citations omitted).
The relationship between sections 23-59 and 23-65 is unclear, and an examination of the legislative history of both fails to provide guidance as to whether section 23-59 provides a right of appeal where a tree warden has acted pursuant to section 23-65 (f) in granting an application to remove trees. While section 23-65 (f) does not expressly provide a right of appeal to the superior court from the granting by a tree warden of an application to remove trees, it provides that "when the applicant is a public utility corporation," an appeal may be taken to the department of public utility control ("DPUC"). Section 23-65 (f) also provides that before acting on an application to remove trees, a tree warden may hold a public hearing as provided in section 23-59. Connecticut General Statutes section 23-65 (f) (rev'd to 1989).
Section 23-59 not only grants a tree warden power to remove trees when, in his own opinion, public safety requires it, but also gives a tree warden authority to care and control of certain trees and shrubs, expend funds appropriated for the care of such trees and shrubs, enforce applicable provisions of law, remove illegally erected signs or other objects, and to prescribe regulations for the care and preservation of trees and shrubs. Connecticut General Statutes section 23-59
(rev'd to 1989). Thus, section 23-59 does not solely address action by a tree warden to remove trees for public safety, but is broader in scope, addressing powers and duties of a tree warden generally.
Furthermore, section 23-59 does not state that a tree warden must make an application to himself to remove trees, yet states that within three days of the public hearing, "the tree warden shall render his decision granting or denying the application," and an appeal to the superior court may be taken within ten days. Connecticut General Statutes section 23-59 (rev'd to 1989) (emphasis added).
Thus, the right of appeal found in section 23-59 was intended to apply to decisions of a tree warden approving applications pursuant to section 23-65 (f), at least where the tree warden holds a public hearing on the applications "as provided in section 23-59." To conclude otherwise would accomplish an unreasonable and irrational result in that appeals would be allowed only when a tree warden acted on his own initiative to remove trees for public safety reasons but not when an applicant other than a public utility corporation CT Page 4401 received permission to remove trees for any other reason. Therefore, section 23-59 provides a right to appeal the Tree Warden's approval of Mr. Hyde's application and the plaintiff, while not "aggrieved," has limited standing on appeal to raise environmental issues within the jurisdiction of the Tree Warden when acting on said application.
However, by their plain and unambiguous language, section 23-65 (f) provides no right of appeal to the superior court and section 23-59 provides a right of appeal only after "such hearing" concerning "such removal" of trees, where "such removal" refers to the proposed removal of trees by a tree warden for public safety reasons. See Connecticut General Statutes sections 23-59, 23-65 (f) (rev'd to 1989). Thus, insofar as section 23-59 contains a provision for an appeal of a decision of a tree warden, that provision is limited to those instances in which a tree warden, acting on his own initiative, determines that trees must be removed for public safety.
Therefore, plaintiff's appeal should be dismissed, even though he claims to have standing under section 22a-19, because no right of appeal exists. See Doyle, 3 CTLR at 650. Statutory standing under section 22a-19 only relieves the plaintiff of having to prove classical aggrievement, not of showing that appeals from the local authority in question are specifically authorized by statute. See id. Standing under section 22a-19 is not enough to maintain an appeal where no independent right to appeal exists. Id.
Defendants also argue that it is jurisdictionally improper to combine a claim for monetary damages with an administrative appeal. The defendants are correct in that "administrative relief cannot encompass a monetary award." Cummings v. Tripp, 204 Conn. 67, 80 (1987). Furthermore, "(t)he Environmental Protection Act authorizes only limited forms of relief and encompasses injunctive and declaratory relief but not a private claim for damages." Connecticut Water Co. v. Beausoleil, 204 Conn. 38, 44 (1987). Consequently, the plaintiff is not entitled to, nor does the court have power to award, damages in this administrative appeal.
Plaintiff prays for a "temporary and permanent injunction," and argues that section 22a-20 of the General Statutes permits the court to award this relief. Section22a-20 provides:
 Procedure supplementary to other procedures. Intervening party. Sections 22a-14 to 22a-20, inclusive, shall be CT Page 4402 supplementary to existing administrative and regulatory procedures provided by law and in any action maintained under said sections, the court may remand the parties to such procedures. Nothing in this section shall prevent the granting of interim equitable relief where required and for so long as is necessary to protect the rights recognized herein. Any person entitled to maintain an action under said sections may intervene as a party in all such procedures. Nothing herein shall prevent the maintenance of an action, as provided in said sections, to protect the rights recognized herein, where existing administrative and regulatory procedures are found by the court to be inadequate for the protection of the rights. At the initiation of any person entitled to maintain an action under said sections, such procedures shall be reviewable in a court of competent jurisdiction to the extent necessary to protect the rights recognized herein. In any judicial review the court shall be bound by the provisions, standards and procedures of said actions and may order that additional evidence be taken with respect to the environmental issues involved.
Connecticut General Statutes section 22a-20 (rev'd to 1989).
By its plain language, section 22a-20 simply states that section 22a-20 itself does not "prevent" the "granting of interim equitable relief" when the court "remands the parties" to "existing administrative and regulatory procedures." Connecticut General Statutes section 22a-20 (rev'd to 1989) (emphasis added). The instant case is an appeal from existing administrative and regulatory procedures and, thus, such procedures have already been exhausted. Furthermore, section22a-20 does not authorize injunctive relief, but simply states that under certain circumstances, it is not prohibited. Section 22a-20 does not authorize injunctive relief where such relief has previously been deemed improper. Prayers for a temporary and permanent injunction "are not proper in an appeal" and "could not be granted in an appeal." Fisher v. Board of Zoning Appeals, 142 Conn. 275, 278 (1955). Therefore, section 22a-20 does not provide authority that in an administrative appeal, a plaintiff under section 22a-19 may seek a "temporary and permanent injunction" in his prayer for relief and, thus, as a remedy for the claimed illegal action of the Tree Warden. CT Page 4403
The appeal is dismissed.
HURLEY, J.