CLINTON NURSERIES, INC. *v.* COMMISSIONER OF
REVENUE SERVICES
(13111)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued November 10, 1987—decision released January 12, 1988

*Thomas A. Cloutier,* with whom, on the brief, was *M. Catheryn Oakland,* for the appellant (plaintiff).

*Robert L. Klein,* assistant attorney general, with whom were *Wilfredo Morales,* certified legal intern, and, on the brief, *Joseph I. Lieberman,* attorney general, for the appellee (defendant).

SHEA, J. The defendant commissioner of revenue services imposed a deficiency assessment against the plaintiff, Clinton Nurseries, Inc., for the sales and use tax allegedly due the state on various items of personal property used in connection with the plaintiff's nursery business. The plaintiff appealed this assessment to the Superior Court pursuant to General Statutes § 12-422.[1] The trial court found that the sales and use tax was properly assessed against the plaintiff's purchase of the components for its irrigation system, which consists of pipes and sprinklers, and its winter protection units, which include concrete railroad ties.

---

[1] "[General Statutes] Sec. 12-422. APPEAL. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under section 12-418, 12-421 or 12-425 may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain, which shall be accompanied by a citation to the commissioner of revenue services to appear before said court. Such citation shall be signed by the same authority, and such appeal shall be returnable at the same time and served and returned in the same manner, as is required in case of a summons in a civil action. The authority issuing the citation shall take from the appellant a bond or recognizance to the state of Connecticut, with surety to prosecute the appeal to effect and to comply with the orders and decrees of the court in the premises. Such appeals shall be preferred cases, to be heard, unless cause appears to the contrary, at the first session, by the court or by a committee appointed by it. Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the treasurer to pay the amount of such relief, with interest at the rate of six per cent per annum, to the aggrieved taxpayer. If the appeal has been taken without probable cause, the court may tax double or triple costs, as the case demands; and, upon all such appeals which are denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

In this appeal from the judgment, the plaintiff claims that the trial court erred: (1) in ruling that the disputed devices are not the type of machinery exempt from the state sales and use tax under General Statutes (Rev. to 1981) § 12-412 (hh);[2] (2) in relying on § 12-426-11b (c) (1) of the regulations of Connecticut state agencies in ruling that the disputed devices were not exempt, when this regulation is invalid; and (3) in ruling that the disputed devices are not materials used in agricultural production within the meaning of the sales and use tax exemption established by General Statutes (Rev. to 1981) § 12-412 (r).[3] At oral argument the plaintiff conceded that his first two claims must fail in view of our decision in *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 527 A.2d 672 (1987). Therefore, we will consider only the plaintiff's third claim. We find no error.

---

[2] General Statutes (Rev. to 1981) § 12-412 (hh), in effect at the time of the defendant's assessment against the plaintiff, provides: "MACHINERY USED IN MANUFACTURING OR AGRICULTURAL PRODUCTION. Sales of and the storage, use or other consumption of machinery used directly in a manufacturing or agricultural production process. The word 'machinery' as used in this subsection means the basic machine itself, including all of its component parts and contrivances, such as belts, pulleys, shafts, moving parts, operating structures and all equipment or devices used or required to control, regulate or operate the machinery, but excluding office equipment or data processing equipment other than numerically controlled machinery used directly in the manufacturing process."

This statute has been recodified as General Statutes § 12-412 (34).

[3] General Statutes (Rev. to 1981) § 12-412 (r), in effect at the time of the defendant's assessment against the plaintiff, provides: "PRODUCTION MATERIALS. Sales of and the storage or use of materials, rope, fishing nets, tools and fuel or any substitute therefor, which become an ingredient or component part of tangible personal property to be sold or which are used directly in agricultural production or in the fishing industry or in an industrial plant in the actual fabrication of the finished product to be sold. For the purpose of this subsection, the raising of poultry and livestock shall be construed to be included in the term 'agricultural production.' Sales of and the storage or use of materials, tools and fuel or any substitute therefor, when such products are used directly in the furnishing of power to an industrial manufacturing plant or in the furnishing of gas, water, steam or electricity when delivered to consumers through mains, lines or pipes."

This statute has been recodified as General Statutes § 12-412 (18).

The plaintiff claims that the trial court erred in not granting an exemption from our sales and use tax for its winter protection units and irrigation system under the provisions of § 12-412 (r). That section provides an exemption for "materials . . . which become an ingredient or component part of tangible personal property to be sold or which are used directly in agricultural production . . . ." The plaintiff contends that the irrigation system and winter protection units are materials "used directly in agricultural production."

We note initially that this statute must be strictly construed in favor of the taxing authority and against the taxpayer because it provides an exemption from taxation. *Skaarup Shipping Corporation* v. *Commissioner*, 199 Conn. 346, 352, 507 A.2d 988 (1986). We conclude that the plaintiff has failed to meet its burden of showing that the commissioner's interpretation of this statute was unreasonable in this case.

I

The plaintiff's argument that it is entitled to an exemption for its irrigation protection units must be reconciled with the relevant agency regulation. The commissioner of revenue services has promulgated § 12-426-11b of the regulations of Connecticut state agencies, which provides in part that protective equipment devices are not entitled to an exemption under § 12-412 (r). The commissioner contends that the winter protection units, including the concrete railroad ties, are protective equipment devices, and are, therefore, not entitled to an exemption under § 12-412 (r). Section 12-426-11b (a) (12) of the regulations of Connecticut state agencies, which determines whether materials qualify for the exemption under § 12-412 (r), provides that the term "materials" as used in the statute "shall not include furniture, fixtures and protective equipment devices or clothing." This regulation must be given the

full force and effect of law. *Fusco-Amatruda Co.* v. *Tax Commissioner,* 168 Conn. 597, 604, 362 A.2d 847 (1975); *Hartford Electric Light Co.* v. *Sullivan,* 161 Conn. 145, 154, 285 A.2d 352 (1971). The question presented here is whether the commissioner has properly interpreted the statute and regulation in assessing the sales and use tax against the plaintiff. This court gives considerable deference to the commissioner's interpretation of taxation statutes and regulations. *Phelps Dodge Copper Products Co.* v. *Groppo,* supra, 128–29; see also *Board of Education* v. *Connecticut State Board of Labor Relations,* 190 Conn. 235, 241, 460 A.2d 1255 (1983); *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 131 n.3, 355 A.2d 236 (1974).

The trial court determined that the winter protection units are protective equipment devices: "The parties' stipulations and testimony by the president of the plaintiff company establish conclusively that the winter protection units are essentially nothing but protective devices." We agree with this finding. The plaintiff itself chose the phrase "winter protection unit" in its pretrial memorandum: "Each winter protection unit consists of concrete railroad ties, each 10 feet in length, running along side each bed. The frame of the unit is formed by curved 20 foot long pipes which are placed in holes every three feet in the railroad ties. This skeleton frame is then covered with plastic. The center of the unit is approximately eight feet tall." The plaintiff and defendant stipulated to these facts concerning the winter protection units, adopting precisely the same language. At oral argument, the plaintiff conceded that the curved pipes that are inserted into the concrete railroad ties for support and the plastic covering placed over these pipes are protective devices and thus are subject to the sales and use tax. The plaintiff, nevertheless, contends that the concrete railroad ties are exempt from taxation. In view of the plaintiff's stipulation that

"[e]ach winter protection unit consists of concrete railroad ties . . ." it was reasonable for the court as the trier of fact to classify them as protective equipment devices.

## II

The commissioner argues that the irrigation system cannot qualify for an exemption under § 12-412 (r) because, as the plaintiff has stipulated, it was assembled from separate component parts into a machine. In *Phelps Dodge Copper Products Co.* v. *Groppo,* supra, we held that component parts of a machine when purchased separately do not qualify for the machinery exemption under § 12-412 (hh). The plaintiff has conceded it is not eligible for a machinery exemption under § 12-412 (hh) because it purchased separate component parts to build an irrigation system rather than a complete functioning machine. The commissioner contends that § 12-412 (hh), as construed in *Phelps* to exclude component parts of machines purchased separately from the machinery tax exemption created by that section, would be rendered superfluous if these parts were eligible for an exemption under § 12-412 (r). See *Hayes* v. *Smith,* 194 Conn. 52, 58, 480 A.2d 425 (1984).

We agree with the commissioner's argument that the legislative decision to exclude component parts from the machinery tax exemption under § 12-412 (hh) would be rendered superfluous if the same component parts were eligible for a tax exemption under § 12-412 (r). It is fundamental that a legislative act must be read as a whole, and that all of its parts must be reconciled so that no part is rendered superfluous. *Hayes* v. *Smith,* supra. We hold that component parts of machinery are not "materials . . . used directly in agricultural production . . ." under § 12-412 (r). We need not consider the commissioner's alternative argument, which was relied on by the trial court, that the irrigation system is not a material used directly in agricultural

production within the meaning of § 12-412 (r) because the pipes and sprinklers are not substances that become part of the agricultural product.

There is no error.

In this opinion the other justices concurred.